## SUPREME COURT.

THE ELECTRO-SILICON COMPANY agt. ASA G. TRASK.

*Trade-mark — Injunction.*

The plaintiffs coined the compound word "*Electro-Silicon*" and applied it to a polishing powder prepared by them from an infusorial deposit. They put up the powder in appropriate packages and acquired a large sale therefor.

The defendant, with a view to imitate their preparation, prepared a powder to be used for the same purpose and put it up in packages similar to those of the plaintiff and designated it "*Electric-Silicon*" and have offered it for sale:

*Held,* that they should be restrained.

*Special Term, April,* 1880.

*Chase & Bestow,* for plaintiff.

*John A. Foster,* for defendant.

VAN VORST, *J.* — The plaintiffs are the manufacturers of a polishing powder and have introduced it into use under the name of "Electro-Silicon." It is put up in wooden boxes, circular in form, the top and sides of which are covered with yellow-colored paper. On the paper covering, near the top, the plaintiffs have caused to be printed the name which they have given to their powder, "Electro-Silicon;" below which are words generally descriptive of their preparation and designating the uses to which it may be applied, to which is added its corporate name as proprietor and their place of business. On the sides are printed directions for its use, as, also, a more detailed account of the article itself.

This preparation is used for polishing gold and silver-plated ware and other substances where luster is required.

Plaintiff and its predecessors, through whom it claims title,

first introduced this article into use, under the name first applied by them, "Electro-Silicon."

The combination of these words is wholly arbitrary and was coined for the purpose.

While the simple word "Silicon" is measurably descriptive of the article it is not so technically. "Electro," as a descriptive word, has no relation to the substance. It, perhaps, suggests the rapidity of movement with which the polish is applied.

"Silicon" is one of the elements and enters into many substances. The substance used by the plaintiff is an "infusorial deposit" consisting of silicon and oxygen, and may be technically denominated "silica" or "silicic acid." It contains, however, according to an analysis in evidence, nearly one hundred per cent of silicon.

The plaintiff has made the effort and has produced and introduced into the market at considerable expense a useful article which is familiarly known and much dealt in. It is known to dealers under its name, "Electro-Silicon."

Six or seven years ago the defendant, who was then in the shoe business, became interested with one Hyatt in putting up and selling an article of polishing powder called "Hyatt's Polishing Powder." But the business proving unsuccessful, and the defendant having sustained some loss, he gave it up, but kept in his possession some of the old boxes and labels which he had used in connection with the article.

About two years ago he resumed the business, with his former boxes and labels, and sent out a canvasser to dispose of it. After making some sales, his canvasser said to him "I have some calls for Electro-Silicon; I think I must have some of that."

The defendant then procured a substance from which he made a powder similar in appearance to that of the plaintiffs, and putting it in boxes covered with yellow paper, with printing thereon arranged much like that of the plaintiff's boxes, introduced it for sale under the name of "Electric-

Silicon," printed upon the cover of the box, in a circular form, similar to that of plaintiff's arrangement. The general appearance of the boxes is much the same, and the one, to an unwary purchaser, might readily be mistaken for the other.

The witness Waterhouse, who testified upon the trial, says, in substance, that he called at the place where the defendant manufactured his article and saw him personally, and asked for "Electro-Silicon," and was handed, or referred to, the "Electric," and, in the course of a conversation which followed, in regard to the difference between the two preparations, the defendant, by way of assigning reasons for putting up "Electric-Silicon," said "he had an article called 'Hyatt's Polishing Powder' and his customers complained that it did not sell very well; it was not met favorably by the public, and some one had suggested the idea if he would get up something looking like 'Electro' he could sell it, and he got this up which is called 'Electric-Silicon' and that it would sell readily for the 'Electro-Silicon.'"

The defendant made a similar statement to the witness Bestow.

Under the evidence the defendant's article is inferior in quality to the plaintiff's and contains less than one per cent of "silicon." Such was the result of the analysis of Mr. Haberstro, an analytical chemist, who stated further that the defendant's preparation consisted principally of sulphate of lime.

From the above statement it seems reasonably clear that the defendant's preparation was designed to be an imitation of the plaintiffs, and to be sold, although an inferior article, for it. Such practices equity cannot sanction.

The form of the boxes, the color of the paper, the arrangement of the printed matter, the name "Electric-Silicon," are all suggestive of a design to fraudulently imitate the plaintiff's trade and business and to reap gain thereby; and that such was his motive is shown by the defendant's own statements.

The case is clearly within the principles announced by LAWRENCE, J., in *Enoch Morgan's Sons & Co.* agt. *Schnachofer* (5 *Abbott's N. C.*, 265), and *Brown* agt. *Mercer* (37 *N. Y. Superior Ct. R.*, 265).

There should be judgment for the plaintiff enjoining the defendant, with costs.